"beth Herd, for the use and maintenance of her and her "daughter Mary Herd, until the said Mary Herd, daugh-"ter of the same Elizabeth Herd, and granddaughter of "John Basil Herd, arrives to the years of sixteen, then "the said land to belong to the said Mary Herd, and to "her heirs and assigns, forever."

Oct. 1799.

Thomas's lessee
vs.
Wootton.

That the said Mary Herd, in the said will mentioned, was the natural, illegitimate daughter of the testator, by the said Elizabeth Herd. That the said Mary Herd died under the age of sixteen, unmarried, intestate, and without issue. That the plantation on which the testator lived, consisted of several tracts of land, the whole of which amounted to 157 acres. That the dwelling house was not on the tract of land called Saint Margaret's, but that Saint Margaret's, and the other tracts, composed and made but one plantation, and was occupied and possessed as one entire tract. That a warrant of escheat issued to affect the said land in the name of John Allen Thomas, who by his will duly executed, devised the same to the lessor of the plaintiff, who obtained a patent therefor prior to the commencement of this action for the said land, by the name of Chance.

The question was, whether the said land was liable to escheat?

Johnson, for the plaintiff.

W. Dorsey, for the defendant.

It was contended on the part of the plaintiff, that under the will, immediately on the death of the testator, an estate in the land vested in Mary Herd, and that on her death, without issue and intestate, the land was liable to be escheated. Boraston's case, in 3 Coke 19, was relied on as in point—2 Mod. 289, and Fearne Con. Rem. 318, were also cited.

THE GENERAL COURT gave judgment for the plaintiff for possession and costs.

## GENERAL COURT, OCTOBER TERM, 1799.

### RUNKEL vs. WINEMILLER, et. al.

MANDAMUS. The proceedings in this case are as follow, to wit: Be it remembered, that at this term, to wit, the second Tuesday of October, being the 14th day of the said month, in the year of our Lord 1794; and during the said term, to wit, on the 22d day of November in the year aforesaid, the Reverend William Runkel comes into the general court here, by Luther Martin and William Pinkney his attornies, and files in court here certain

Oct. 1799.

Runkel
vs.
Winemiller.

affidavits and papers, the tenor whereof are as follow, to wit: "*John Gebhart*, of Frederick county, aged about 44 "years, being duly sworn on the Holy Evangely of Al-"mighty God, deposed and made oath, that the respec-"tive congregations of that religious sect or persuasion "called the German or High Dutch Reformed Christi-"an Church, have, or are entitled to have, a minister to "perform divine service; which minister, by the tenets, "articles, or constitution of their church or persuasion, "must be *appointed out of the members of their synod. That* "*in order to procure the appointment and induction of a* "*minister, the congregation apply to the synod for a minis-* "*ter; the synod recommend one to them, which minister, so* "*recommended, is proposed to the congregation, and if ac-* "*ceptable to a majority, he is called upon and authorised by* "*the elders of the congregation, by a writing called a voca-* "*tion, to officiate for them; and if he agrees to officiate, he* "*is thereupon inducted and put in possession of his function,* "*and the emoluments belonging to it; and such minister is* "*considered as entitled to hold the said function, and as* "*having an interest therein for life, unless displaced by the* "*synod at the instance of a majority of the congregation.*

"The said *Gebhart* further deposeth, that the congre-"gation of the German Reformed Christian Church at "Frederick-Town, did apply to their synod for a minis-"ter, and that the synod did recommend to the said con-"gregation the Reverend *William Runkel*, who being so "recommended was duly proposed to the said congrega-"tion, and was accepted by a very great majority of the "said congregation, if not unanimously; that thereupon "the said *Runkel* was called upon and authorised by the "elders of the congregation aforesaid, by a writing call-"ed a vocation, to officiate for them; that the said *Run-* "*kel* did accept the vocation, and agree to officiate for "the said congregation; and thereupon was duly induct-"ed and put in possession of his function and the emo-"luments thereto belonging, ten years past or thereabouts; "that those emoluments consist of the enjoyment of a "parsonage-house, and the benefits and profits of the "same, also eighteen cords of wood annually, and also, "an annual salary of eighty pounds current money.

"The said *Gebhart* further deposeth, that none are "considered real members of their church, agreeable to "the rules adopted by the said congregation, except "such who join in communion, and also contribute to the "making up that annual salary to which the minister is "entitled, (unless excused therefrom by reason of indi-"gence,) and that a congregational list is annually to be "signed by such who wish to be considered members of "the said church, and deposited with the minister; and

"that no persons, agreeable to those rules, are members "of the said church, but such who sign the said list; the "male signers of which have alone a right to vote con-"cerning, or interfere with, any of the affairs of the said "church. And he further saith, that the list of names "contained in the schedule, or paper No. 3. D. herewith "exhibited, is a true list of the male members of the said "church who have signed the said congregational list for "the present year. He also saith, that *William Schney-*"*der*, who has been forcibly introduced into the said "church as a minister, is not a member of the said synod, "nor owned or acknowledged by them as a member of "their church.

"Sworn before, J. BULLEN."

[The other papers and affidavits are—A *letter* from *the synod* to the *German Reformed Congregation* of the 13th May 1784—"That if Mr. *Henop,* your present minister, "should approve of the aforesaid vocation, your congre-"gation be at perfect liberty to vocate any minister who "is a member of the synod; as likewise the minister, be-"ing thus vocated, is authorised to accept the vocation." *A vocation* from *the elders* of the 9th of August 1784, to the Rev. Mr. *Runkel,* as *teacher* and *minister* in Frederick-Town congregation, &c. Other *letters* of the 20th June 1791, 30th April 1793, and 20th May 1794, from *the synod* to *the congregation,* stating that if they would agree amongst themselves, and fix upon a *minister* of *the synod,* Mr. *Runkel* would resign—that Mr. *Schneyder* did not belong to the church. &c. *The church rules,* a *list* of the *members* of the *church,* &c. *The title papers* to the *church, parsonage-house,* &c. *Affidavits* of the *manner* of *electing elders,* and the election of the present elders. And *affida-vits* of the manner of the entry of the defendants into the church, and their keeping the plaintiff thereout, &c.]

And thereupon, on motion of the said *William Runkel,* by his attornies aforesaid, it is ruled by the court here, that *Henry Winemiller,* [naming all the defendants,] of Frederick county, shew cause to this court, on Tuesday the 10th day of February next, why this court should not issue a writ of *mandamus,* commanding them, and each of them, to restore, or cause to be restored, the said *William Runkel* into the place and function of minister of the congregation of the German or High Dutch Re-formed Christian Church in Frederick-Town, and to the use of the church of the said congregation, and the pul-pit thereof, with all liberties, privileges and advantages, to that place and function belonging or appertaining. And it is also ruled by the court here, with the consent of the said W. R. by his attornies aforesaid, that the counsel for the said H. W. &c. have access to all the

books, papers and memorandums, belonging to the congregation of the German or High Dutch Reformed Christian Church in Frederick-Town, remaining in the possession of the said W. R. or any of the elders or deacons of the said church, or in the possession of any person appointed by them to keep the same.

Copies of which said rules were made and sent to the said H. W. L. B. &c. The same day is given to the said W. R. &c.

At which said day, to wit, Tuesday the 10th day of February, in the year of our Lord 1795, in this present term of October, in the year 1794 aforesaid, comes again into the general court here, the said W. R. by his attornies aforesaid. And the said H. W. &c. also come into the general court here, by *Philip Barton Key, John Thompson Mason,* and *Arthur Shaaff,* their attornies. And thereupon, on motion of the said H. W. L. B. &c. by their attornies aforesaid, and with the consent of the said W. R. by his attornies aforesaid, further day is given to the said H. W. &c. to shew cause, &c. until the second day of the next term of the court here, to be held on the second Tuesday of May next. The same day is given to the said W. R. then, &c.

At which said next term, to wit, the second Tuesday of May, being the 12th day of the said month, in the year of our Lord 1795, and on the second day of the said term here, to wit, on the 13th day of the said month, in the year last aforesaid, come again into the general court here, as well the said W. R. by his attornies aforesaid, as the said H. W. &c. by their attornies aforesaid. Thereupon the respective parties aforesaid, by their attornies aforesaid, file in court here certain papers and affidavits, the tenor whereof are as follow, to wit: [The *affidavits on the part of the defendants state*—— "That by the rules and constitution of the German or "High Dutch Reformed Christian Church in Frederick- "Town, in which the plaintiff has officiated as minister, "the majority of the congregation of the said church "alone are entitled to appoint a minister to officiate in "the said church, who may be any person the said ma- "jority think proper, and need not be a member of the "synod. That the said synod have no kind of power "over the congregation or minister, except that of advis- "ing, which may be rejected if it is thought proper. "That the said minister acts by contract between the "congregation and himself, and has no right to the pul- "pit, or to any thing else respecting his function, except "what he derives from such contract. That the place of "a minister is nothing more than a service to be per- "formed to the congregation, for so much as the congre-

"gation will voluntarily subscribe, and he will accept of. "That the said minister has no right to any salary or "emolument of any kind belonging to him in the capaci- "ty of minister, but depends upon the annual subscrip- "tion of the congregation; and the minister is not oblig- "ed to accept of the sum subscribed, and if he does not "choose to stay for the money, he may leave the con- "gregation. That the said congregation may likewise, "at any time, displace the said minister at their will and "pleasure; and if the majority say so, he is no longer a "minister of that particular church. That the house in "which the minister has usually lived is solely the pro- "perty of the congregation, and does not belong to the "officiating minister as appurtenant or belonging to his "station; but that the congregation, or the majority, "might if they choose stipulate that he should not have "it, and apply it to other purposes. That the plaintiff "is disapproved of by a large majority of the said con- "gregation, who have solicited and wished him to leave "the said congregation; but that he and his elders are "determined to support him, if possible, against the "wishes and directions of the rest of the congregation." Also, "that the rules and constitution of the above "church are similar to those of the Lutheran Dutch "Church." Those rules were stated by members of the said last mentioned church. "That there is no rule that "if a member does not subscribe to a particular minis- "ter he is no longer a member of the church. That the "plaintiff was displaced, and *Schneider* appointed by a "majority," &c.]

Thereupon, on motion of the said H. W. &c. by their attornies aforesaid, and with the consent of the said W. R. by his attornies aforesaid, further day is given to the said H. W. &c. to shew cause, &c. until the second day of the next term of the court here, to be held on the second Tuesday of October next. The same day is given to the said W. R. then, &c.

At which said next term, to wit. the second Tuesday of October, being the 13th day of the same month, in the year of our Lord 1795, and on the second day of the said term, to wit, on the 14th day of the said month, in the year last aforesaid, come again into the general court here, the parties aforesaid, by their attornies aforesaid. And thereupon, on motion of the said W. R. by his attornies aforesaid, it is ruled and ordered by the court here, that the first day of the next term be given to the said H. W. &c. of Frederick county, to shew cause why a writ of *mandamus* should not issue directed to them, requiring them, and each of them, to restore, or cause to be restored, the said *William Runkel*

into the place and function of minister of the congrega-tion of the German or High Dutch Reformed Christian Church in Frederick-Town, in the said county, and to the use of the church of the said congregation, and the pulpit thereof, as minister of the said congregation, with all liberties, privileges and advantages, to that place and function belonging or appertaining. And it is further ruled and ordered by the court here, that notice of this rule be given to the Reverend *William Schneider* of the said town and county, to the intent that he may be heard as he shall be advised.

Copies of which said rule were made and sent to the said H. W. &c. and also to the said *William Schneider,* &c. The same day is given to the said W. R. then, &c.

At which said next term, to wit, the second Tuesday of May, being the 10th day of the said month, in the year of our Lord 1796, come again into the general court here, the parties aforesaid, by their attornies aforesaid. Where-upon all and singular the premises being by the court here seen, heard, and fully understood, and mature de-liberation being thereupon had, it is considered by the court here, that the writ of the state of Maryland of *mandamus* issue forth out of the general court here, di-rected to the said H. W. &c. commanding them, and each of them, immediately to restore, or cause to be re-stored, the said W. R. into the said place and function of minister of the congregation of the German or High Dutch Reformed Christian Church in Frederick-town, in the said county, and to the use of the church of the said congregation, and the pulpit thereof, as minister of the said congregation, with all liberties, privileges and advantages, to that place and function belonging or ap-pertaining, or signify to the court here cause to the con-trary thereof, &c. and which said writ of *mandamus* ac-cordingly issues in form and of the tenor following, to wit: [*See the writ in 2 Harris's Entries,* 704, 705.] The same day is given to the said W. R. then, &c.

At which said second Tuesday of October, being the 11th day of the said month, in the year of our Lord 1796, and the day of the return of the aforegoing writ of *man-damus,* comes again into the general court here, the said W. R. by *Luther Martin* and *William Cooke,* his attornies, and the said H. W. &c. to whom the said writ of *manda-mus* was in form aforesaid directed, likewise come into the general court here, by *Arthur Shaaff* and *Philip Bar-ton Key,* their attornies. And the said W. R. by his at-tornies last aforesaid, prays that the said H. W. &c. shew cause to the court here why a return has not been made by them of the said writ of *mandamus* in form afore-said to them directed, according to the command of

the said writ; and files in court here a certain affidavit annexed to a copy of the said writ of *mandamus*, of the tenor following to wit: [Here follows the affidavit that a copy of the writ was delivered to certain of the defendants, &c.] And the said W. R. by his attornies aforesaid, also file in court here certain other affidavits of the tenor following, to wit: [Verifying that a copy of the writ was served on others of the defendants, and that others had left the state, &c.]

Oct. 1799.

Runkel
vs.
Winemiller.

Whereupon, the said H. W. &c. by their attornies last aforesaid, pray that they may not be compelled to shew cause why a return has not been made of the said writ of *mandamus* to them in form aforesaid directed, for that it does not appear by the said affidavits that notice has been given to each of them the said H. W. &c. of the said writ of *mandamus*, nor does it appear that an official copy of the said writ of *mandamus* has been served on each of them the said H. W. &c.

Whereupon, all and singular the premises being by the court here seen, heard, and fully understood, and mature deliberation thereupon had, it is ruled by the court here, that the said H. W. [*and the others of the defendants on whom the writ was served, &c.*] of Frederick county, do return, on or before the 22d day of October instant, the writ of *mandamus* to them directed, bearing date the 18th of August 1796, whereby they and each of them were commanded, that immediately upon the receipt of the said writ they should restore, or cause to be restored, the said W. R. into the place and function of minister of the congregation of the German or High Dutch Reformed Christian Church in Frederick-town, in the said county, and to the use of the church of the said congregation, and the pulpit thereof, as minister of the said congregation, with all liberties, privileges and advantages, to that place and function belonging or appertaining, or signify to the said general court cause to the contrary thereof, lest in their default complaint should come to the said court repeated, &c.

Copies of which said last mentioned rule were made and sent to the said H. W. &c.

The same day is given to the parties aforesaid then, &c.

At which said day, to wit, on the 22d day of October in this present term, comes again into the general court here the said W. R. by his attornies aforesaid; and the said W. R. by his attornies aforesaid, files in court here a certain affidavit annexed to an attested copy of the rule lastly herein before mentioned, and which said affidavit is of the tenor following to wit: [Here follows the affidavit, that attested copies of the rule had been served on each defendant, &c.]

And thereupon the said H. W. &c. in pursuance of the command of the said writ of *mandamus*, and in virtue of the rule last aforesaid, come into the general court here, by their attornies aforesaid, and make return to the court here of the said writ of *mandamus*, as follows, to wit: "We, *Henry Winemiller*, &c. &c. of Frederick county, "the parties to whom the writ hereto annexed is direct- "ed, by virtue of the writ aforesaid, do most humbly "certify to the judges of the general court, sitting in the "general court for the western shore of Maryland, that "the congregation of the German or High Dutch Re- "formed Christian Church in Frederick-town, in the "county aforesaid, which is mentioned in the said writ "hereto annexed, is an ancient congregation composed of "all the members of the German or High Dutch Reform- "ed Christian Church in Frederick-town, in the coun- "ty aforesaid, to which said congregation there is a "church, and a pulpit thereof in Frederick-town afore- "said, belonging and appertaining, which is the same "church and pulpit in the said writ mentioned. We "do further certify, that there are, and have been "from time immemorial, certain rules and ordinan- "ces of the said congregation; which said rules "and ordinances the congregation, and the members "thereof, have been accustomed to, and ought to have "from time immemorial. We do further certify, that "the said rules and ordinances are still in full force and "virtue, and have been from time immemorial; that by "the said rules and ordinances of the said congregation, "it is ruled and ordained, that the majority of members "of the said congregation, at their sole will and plea- "sure, may at any time elect a person to be minister of "the said congregation; and if such person so elected to "be minister of the said congregation does agree to serve "as minister of the said congregation, he is thereupon, "by the rules and ordinances aforesaid, to be by a ma- "jority of the members of the said congregation, induct- "ed to, and put in possession of, the place and function "of minister of the congregation aforesaid, and the use "of the said church of the said congregation, and the "use of the pulpit thereof, as minister of the said con- "gregation, with all liberties, privileges and advantages, "to that place and function belonging and appertaining; "and the said minister, when so elected and inducted, "and put in possession, holds the said place and function "of minister of the said congregation at the will and "pleasure of a majority of the members of the said con- "gregation, and removeable at their pleasure. We do "further certify, that we are members of the said con- "gregation, and duly entitled to all the rights and pri-

"vileges of members of the said congregation. That by "the rules and ordinances aforesaid of the said congre- "gation, it is further ruled and ordained, that a majori- "ty of the members of the said congregation may at any "time, at their sole will and pleasure, without any cause, "remove and displace the said minister of the said con- "gregation, so elected and inducted, from the place and "function of minister of the said congregation, and from "the use of the said church of the said congregation, "and from the use of the pulpit thereof, as minister of "the said congregation, and from all liberties, privi- "leges and advantages, to that place and function be- "longing and appertaining. We do further certify, "that a majority of the members of the said congregati- "on did heretofore, on the 9th day of August 1784, "duly elect the said *William Runkel* to be minister of "the said congregation, and that the said W. R. did "afterwards agree to serve as minister of the said con- "gregation, and that he was thereupon, by a majority of "the members of the said congregation, inducted to, and "put into possession of, the place and function of mini- "ster of the congregation aforesaid, and the use of the "said church of the said congregation, and the use of "the pulpit thereof, as minister of the said congregation, "and all liberties and advantages to that place and "function belonging and appertaining. We do further "certify, that a majority of the members of the said con- "gregation, and we, together with the said majority, "and being part of the said majority, did duly meet and "assemble together on the 6th day of March 1794, at the "said church in Frederick-Town aforesaid, to continue "or remove the said *William Runkle* from the place and "function of minister of the said congregation, and from "the said church of the said congregation, and from the "use of the pulpit thereof, as minister of the said con- "gregation, and from all liberties, privileges and advan- "tages, to that place and function belonging and apper- "taining, as the said majority should then and there de- "termine, of all which premises the said W. R. had due "and timely notice and warning; and that the said ma- "jority of the members of the said congregation, and we, "together with the said majority, and being part of the "said majority, did then and there, on the said 6th day "of March 1794, at the said church in Frederick-town "aforesaid, duly remove and displace the said W. R. "from the place and function of minister of the said "congregation, and from the use of the said church of "the said congregation, and the pulpit thereof, as minis- "ter of the said congregation, and from all liberties, "privileges and advantages, to that place and function

Oct. 1799.

Runkel
vs.
Winemiller.

"belonging and appertaining; which said removal is the "said removal complained of in the writ hereto annexed.

"Wherefore, we cannot, nor can either of us, restore "the said W. R. into the said place and function of mi- "nister of the congregation of the German or High "Dutch Reformed Christian Church in Frederick-town, "in the said county, and to the use of the church of the "said congregation, and the pulpit thereof, as minister "of the said congregation, with all liberties, privileges "and advantages, to that place and function belonging "and appertaining, as by the writ aforesaid we are com- "manded.   *Given* under our hands and seals this 18th "day of October, 1796.        HENRY WINEMILLER."

[*Also signed and sealed by the other defendants.*]

And thereupon the said W. R. by his attornies afore- said, having read the said return to the writ aforesaid, protesting that the said return and the matters therein contained are insufficient in law to preclude him the said W. R. from having a *peremptory* writ of the state of Maryland of *mandamus*, in this behalf, prays the court here, that by reason of the insufficiency of the said re- turn, a peremptory writ of the state of Maryland of *mandamus* may be awarded unto him the said W. R. &c.

But because the court here are not advised to give their judgment of and upon the premises aforesaid, a day is therefore given to the parties aforesaid, before the court here, until the second Tuesday of May next, to hear thereof their judgment, for that the court here are not, &c.

At which said second Tuesday of May, being the 9th day of the same month, in the year of our Lord 1797, come again into the general court here the parties afore- said, by their attornies aforesaid. *Whereupon*, for that the court here are not yet advised to give their judg- ment of and upon the premises aforesaid, day therefore, *by consent of the parties aforesaid, by their attornies afore- said*, is further given to the said parties, to hear thereof their judgment, until the second Tuesday of October next, for that the court here as yet are not, &c. [Same appearances and continuances at October term, 1797, May term 1798, October term 1798, and May term 1799, except that the case was not continued "*by consent*" at October term 1797, and October term 1798.]

And now here, at this day, to wit, the said second Tuesday of October, being the 8th day of the said month, in the year of our Lord 1799, come again into the general court here, as well the said W. R. by *Luther Martin* and *Robert Goodloe Harper*, his attornies, as the said H. W. &c. by *Arthur Shaaff* and *Philip Barton Key* their attornies aforesaid.   Whereupon, all and singular the premises being by the court here seen, heard, and

fully understood, and mature deliberation thereupon had, for that it appears to the court here, that the said H. W. &c. have certified and returned to the court here an insufficient cause for not restoring, or caused to be restored, the said W. R. into the said place and function of minister of the said congregation of the German or High Dutch Reformed Christian Church in Fredericktown, in the county aforesaid, and to the use of the church of the said congregation and pulpit thereof, as minister of the said congregation, with all liberties, privileges and advantages, to that place and function belonging or appertaining; and that the said return is insufficient in law to preclude the said W. R. from the peremptory writ of the state of Maryland of *mandamus.* It is therefore considered by the court here, that the *peremptory* writ of the state of Maryland of *mandamus* issue, directed to the said H. W. &c. commanding them, and each of them, absolutely to restore, or cause to be restored, the said W. R. into the said place and function of minister of the congregation of the German or High Dutch Reformed Christian Church in the town and county aforesaid, and to the use of the church of the said congregation, and the pulpit thereof, as minister of the said congregation, with all liberties, privileges and advantages, to that place and function belonging or appertaining, &c. It is further considered by the court here, that the said W. R. recover against the said H. W. &c. the sum of ——— for his costs and charges about his suit in this behalf expended, according to the form of the statute in such case made and provided. And thereupon the said W. R. by his attornies aforesaid, prosecutes and sues forth out of the general court here, the *peremptory* writ of the state of Maryland of *mandamus,* directed to the said H. W. &c. returnable here on the second Tuesday of May next, &c.

*Shaaff* for the defendants, (at *May* term 1795, on the return of services of the rule,) moved the court for permission to file cross affidavits against the motion for a *mandamus;* and the question was then argued by him, and by *Pinkney,* contra. The court did not then decide whether cross affidavits ought to be considered in determining whether a *mandamus* should issue; but they permitted the defendants to file them, and the cause was continued.

*Shaaff,* (at *October* term 1795,) objected to the form of the rule. That if the office is full it is necessary that the party in possession should be made a party—*Esp.* 672. 3 *Burr.* 1458. The rule in this case follows those in

[Oct. 1799.

Runkel
vs.
Winemiller.

*Burr.* 1266 & 1453; but *Schneider* being in possession, the *mandamus* cannot go to him; he not being named in the rule. The rule ought to be in the alternative—*Esp.* 674. 2 *Burr.* 1043. 3 *Burr.* 1265. When the rule is general the *mandamus* is in the alternative—*Lill. Ent.* 614.

*Pinkney,* for the prosecutor, cited 5 *Burr.* 2740, 2743. 1 *Wils.* 133, 283. 3 *Blk. Com.* 111.

*Shaaff.* in reply. In 3 *Burr.* 1265, *Hanmer,* who was interested, had no notice; although the *mandamus* was to the trustees, the court ordered notice to be given to *Hanmer.* In 1 *T. R.* 331, a *mandamus* to a bishop. The rule was enlarged to make the person interested a party. In 3 *Burr.* 1453, it was objected for want of notice to the mayor *de facto,* who was in possession and interested. The rule was amended.

*The rule* was amended so as to give notice to Mr. *Schneider.*

*Shaaff,* (at *May* term, 1796.) against the rule for a *mandamus,* raised the following questions, viz.

1st. Has the prosecutor shewn sufficient facts to entitle himself to the office claimed?

2d. Is the office claimed such a one for which a *mandamus* will lie on the prosecutor's facts?

3d. Can the adverse affidavits be admitted to contradict the prosecutor's facts?

4th. If the adverse affidavits are admitted will they alter the case?

As to the *first* objection—The prosecutor must shew a good title, or he must fail on his own shewing. By the rules of the church, the parson must be ordained. By *Gebhart's* deposition he must be a member of the synod; and it is not proved that the prosecutor was neither ordained or of the synod. It is only stated that the minister is *considered* as having an interest for life; not positively that he has an interest for life. There is a difference between a *mandamus* to restore and to admit.—3 *T. R.* 575.

As to the *second* objection. A *mandamus* only lies to restore a public officer; where it only relates to private things, the party is left to his ordinary remedy, except in cases founded on charter.—1 *T. R.* 404. 3. *Bac. Ab* 528, 531, 532. as to charters; as to public offices, *Comb.* 41. 3. *Bac. Ab.* 532. *Comb.* 133. 1. *Stra.* 58. *Sty.* 457. *Vin. tit. Mandamus,* 135. 2. *Sid.* 40, 169. 3. *Lev.* 309. 3. *Mod.* 352. 1. *Shower,* 217. 2. *Sid.* 112. 3. *Bac. Ab.* 529, 530. 2. *T. R.* 189, (*note.*) 2. *Barnd.* 398. From all these

cases it appears, that if the function is not of a public nature, a *mandamus* does not lie. Since the revolution, religion is on no public establishment—Any particular sect of religionists does not interest the public more than a particular association for any other purpose. Religion, to be sure, is of a great national benefit; the individual sects are not. So contracts are of great political benefit, but any contract of individuals is not. Suppose a large number of men, by private contract, were to erect a private company of a mechanical nature, under certain regulations, and those regulations were to be broken, a *mandamus* surely would not lie. Why then where the association is of a religious nature? It cannot be said that society is interested in every sect of christians, as if a new sect was now to spring up of only a dozen men. The depositions in this case are to be considered, to see if they prove this to be of a public nature. They only state a synod, a vocation, and a reception by the congregation. The synod has no powers which the law takes notice of having been created by themselves. Look at the history of the synod—The vocation, and the reception by the congregation, are quite a private thing, of a contract between the congregation and the minster. The cases of *The King vs. Blooer*, 2 *Burr.* 1013, and *The King vs. Barker*, 3 *Burr.* 1265.—The first was a donative with an endowment, &c. It being a donative brings it within a different principle. Donatives originally flowed from the crown, of course must be granted by letter-patent. This brings the case within the principle of 1 *T. R.* 404, as to charters. See 2 *Blk. Com.* 22. *Co. Lit.* 344. *a.* The principle on which the case of *The King vs. Blooer* was decided, was that there were temporalities annexed, viz. an endowment of lands to the curate *virtute officii.*

In the present case at bar, the temporalities depend upon *Gebhart's* deposition, and the vocation. Although the deposition states the emoluments, yet it must be coupled with the vocation. They both together prove, that the emoluments, except the parsonage house, depend upon *contract.* There is a distinction between cases where the temporalities are appendant to the function, and where they are only annexed by contract. In the first case, the person enjoys them *virtute officii*, in that character; in the last he enjoys them as an individual by the particular contract. In the first case the function is the principal, and draws after it the temporalities, and in case of fees of office, disposing of the function deprives the parties of the fees; but in the case of the contract the function does not draw after it the temporalities; they depend upon the contract, and if the party is wrongfully

Oct. 1799.

Runkel
vs.
Winemiller.

dispossessed, the contract secures them. The deed shews that the *parsonage-house* does not belong to the parson, as such; it is made to the general use of the congregation, and if the parson has used it, it must be by the implied contract and consent of the congregation and trustees. No parol evidence can contradict a deed. There can be no declaration of uses or trusts without writing. See Statute of Frauds, 29 *Car. II. ch.* 3. This is considering the deed in operation; but the lives are dropped off; it being an estate for life only. The bill of rights prevents a grant to any religious person, as such, without the consent of the legislature. The case of *The King vs. Barker,* 3 *Burr.* 1265, was an endowed meeting-house, and comes within the reasoning of the case of *The King vs. Blooer* in that point. Those meeting-houses in England come under principles different from churches in this state. Since the toleration act, those meeting houses are taken notice of by act of parliament. The meeting-house must be registered. The party must take the oaths to government. See statute 1 *W. & M. stat.* 1, *ch.* 18. It has been considered as of much importance to the granting of a *mandamus,* that the party was to take the oaths to government —3 *Ba. Ab.* 532.

As to the *third* objection. In all cases of *mandamus* to admit, restore, &c. adverse affidavits have been received, and the very term seems to import that they are contradictory. The rule in such cases is this; in cases where the prosecutor's affidavits state a clear case, and the adversary affidavits only make it doubtful, in such case a *mandamus* goes to try the right, but not where the adversary affidavits make it clear—*Bull. N. P.* 200. *Esp.* 670, 671. The prosecutor must state a good case; and it must be immaterial whether the adverse affidavits state a new fact, or contradict any one advanced by the prosecutor. The reason given why the adverse affidavits are not to be received, is because the prosecutor cannot by counter affidavits destroy them. But this reason equally applies to the case where they go to explain; in which case they are certainly received. In the two cases of *The King vs. The Bishop of London,* 1 *T. R.* 331, and *The King vs. Jotham,* 3 *T. R.* 575, the court acted upon the adverse affidavits, commented and in part founded their judgment on them—1 *Wils.* 11. 2 *T. R.* 183. *Cowper,* 523. 4 *T. R.* 125.

As to the *fourth* objection. These affidavits most expressly contradict the prosecutor's case in the whole.— They state a power of removal in the congregation *ad libitum,* and that they have removed. If a sufficient ground of removal is shewed, although the removal is irregular, the court will not grant a *mandamus—Cowper*

523, 2 *T. R.* 197. If a man is removable *ad libitum,* no cause need be shewn—1 *Stra.* 115, 674. The court have a discretionary power in such cases—3 *Bac. Ab.* 540. 2 *T. R.* 188. 1 *T. R.* 403, 404.

*Pinkney,* in support of the rule *(a)*—The non-user of the writ is no evidence of the want of power in this court to grant it. The subject, if considered on the bill of rights and constitution, will not alter the case.

This question may be considered upon three grounds:

1. Has the prosecutor shewn grounds to prove him-self entitled?

2. Can adverse affidavits negative the facts stated in the prosecutor's case?

3. Have the affidavits contradicted the prosecutor's facts?

If the parson has not made out a good case, he must fail; and if there is a salary annexed, it matters not how it is raised, whether by contract or not. The case in 3 *Burr.* 1265, is exactly the same as the present. The par-sonage-house is an emolument; it was always intended for the parsonage. The congregation have applied it to the use of the minister, and the prosecutor has been put into possession as minister. It is not necessary he should have either a legal or equitable title—2 *Burr.* 1045. If temporal advantages are annexed to the function, a *man-damus* will lie to restore. The appointment, induction, &c. of Mr. *Runkel,* is a necessary implication that he was a member of the synod at the time of his vocation. There is no proof to contradict this. It is only incum-bent on him to shew a title in order to obtain a *man-damus.* If the court are satisfie. from the affidavits in support of the rule, they will grant the writ to try the right. If a *mandamus* is refused, the prosecutor is with-out remedy, and the court assume the province of decid-ing finally on facts. Where there is a litigation of facts, the court always grants a *mandamus.* There is no feign-ed issue offered in this case. If the authorities are ex-amined, it will be found that the court did not in any case determine that the affidavits could be contradicted. The distinction taken between the nature of the function and the right to it. In 1 *Wils.* 11, particular facts were agreed to by both sides; there was no opposition as to those facts. In 3 *T. R.* 575, the prosecutor did not make out a *prima facie* title. If positive contrary facts are stated by the opponents they will destroy a title operat-ing by implication. A *prima facie* title, arising from a po-

*(a)* This is a sketch of Mr. *Pinkney's* argument made at May term, 1795.

Oct. 1799.

Runkel
vs.
Winemiller.

sitive proof, cannot be contradicted to defeat a right to a *mandamus*. The question of fact, as to the nature of the function, ought not to be tried on affidavits. It is the nature of the examination which makes it improper for the court to decide the facts. In 2 *Stra.* 797, 896, upon the writ of *mandamus*, the nature of the office may be inquired into. Where there is dimissatorial power in the bishop, the Court of King's Bench will not grant a *mandamus*. The court will grant a *mandamus* where there is any ground to try the right.—1 *T. R.* 425, 426. The nature of the function may be returned on a *mandamus.* 1 *Stra.* 115. In 2 *Burr.* 1043, Lord *Mansfield* said, the court would not try the merits upon affidavit. So in 1 *T. R.* 333, 384, if a custom is litigated, the court will grant a *mandamus* for the trial of the right. Some title or colour of title must appear upon the whole case to ground a *mandamus*, and that is sufficient—*Esp.* 660. The court will not grant the right where it is useless; where the cause of amotion is admitted, and the power of amotion is confessed—2 *T. R.* 185. The cross affidavits do not state that the synod have no power over the congregation or minister, they only state generally that the synod have no power, physically. The court never exercise their discretion on the adversary affidavits.

*Martin.* (Attorney General,) on the same side. The High Dutch Reformed Christian Church has a certain form of church government, called a Synod, composed of ministers of that church, from any of the states, and known long before our present government was established. They meet in Pennsylvania, because more central. If any of the ministers disregard the monitions of the synod, the only power they have is to declare the person no longer a minister of that church. This cause is to be considered on the testimony before the court. The deposition of *Gebhart* and others, the vocation of the synod, and the vocation of the elders, prove that Mr. *Runkel* was received and inducted, with the consent of the synod and congregation, and that he was in possession for eight years. It has been alleged that there are two requisites which have not been complied with. 1. He must be a member of the synod; and 2dly that he was not ordained. Every minister of the church ought to be a member of the synod. The synod is composed of all the ministers of the church. He could not be a minister without being ordained. The letter of the synod to the congregation, dated the 13th of May 1784, stated that they were at liberty to vocate any minister who was a member of the synod; and on the 9th of

August the elders, by their vocation, call upon Mr. *Runkel*, and he was regularly inducted and put into possession. The congregation afterwards became dissatisfied, and applied for the appointment of Mr. *Schneider*. The synod objected to him, because he was not a member of the synod. They are bound to receive none but an ordained minister. There is no contrary evidence to shew that Mr. *Runkel* was not a member of the synod, or that he was not ordained. It is not possible to suppose the synod would appoint any other person than one who was of the synod, and who was ordained. The possession of Mr. *Runkel* for eight years is the strongest reason for supposing he was a member of the synod and ordained. 3 *T. R.* 575. *The King vs. Jotham*—The party applying for a mandamus must shew *prima facie* evidence of his right. It was admitted the congregation had the right to remove the minister if he misbehaved. He conceived he had a right for life. It appeared he had grossly misbehaved. The toleration act required that certain ceremonies should be complied with. The prosecutor ought to shew he had complied, because his claim arose under the toleration act. It was absolutely necessary that he should be ordained, after his election, by the ministers of the Baptist church. It did not appear that he had complied with the ceremonies required by the sect of which he was a member, which were to have been subsequent to his election. Every qualification of Mr *Runkel* must have taken place prior to his election, and from his election by the congregation a presumption could arise that he was ordained. He must lay such facts before the court as will warrant them in presuming he has title. *Say. Rep.* 39, 40—It is not a good return to a *mandamus* that he was not qualified after being elected and put into possession. Here Mr. *Runkel* was recommended, appointed, approved and inducted, and continued in possession eight years. To prove Mr. *Runkel* was invested with temporal rights, he cited 3 *Burr.* 1266, where the only endowment was the use of the meeting-house and the pulpit. The garden is not stated to be in trust for the preacher. Held that where there is a right to execute an office, perform a service, or exercise a franchise, (more especially if it be in a matter of public concern,) and a person is kept out of possession or dispossessed of such right, the court will assist by a *mandamus*. Here the minister is to perform a service. If religion is of public concern, government is essentially interested in the support of it. The propagation of religion is of the utmost consequence. The deed from *Dulany* to the trustees is for a lot of ground, with the meeting-house, in

Oct. 1799.

Runkel
vs.
Winemiller.

trust for the use of the congregation, to be employed for the purpose of religious worship, of sitting under such minister as should be appointed. This is as complete an endowment as in the case in 3 *Burr.* 1266, where the clergyman had neither the legal interest, nor was he *cestui que trust.* He had only an equitable interest. He was only to be admitted to the pulpit. The *mandamus* in that case was to go the trustees. In this case the persons who did the wrong have no title.

As to the parsonage-house, he cited 2 *Burr.* 1045. The deed from *Lowndes* is to the trustees, and for the use of the congregation for one-fourth of two lots of ground.— Supposing the estate to exist under the deed, as soon as there is an appropriation of the ground to any particular purpose the use is executed. The right of the function draws to it every thing for the use of the congregation, which is appropriated to some religious purpose. The erecting a parsonage-house, and using it for the parson, was an appropriation, an equitable title in the congregation, for the use of the congregation forever. This church might last forever. The constitution does not infringe vested rights, legal or equitable. The congregation is in possession, which is an interest claimed by them. If a contract is made to allow a yearly salary to the minister, during his continuing in his function, it is an endowment. The persons who made the contract are liable to an action. The stipend to the minister is permanent, and co-extensive with the duration of his function, to which the parsonage-house is annexed. In 1 *T. R.* 331, a lecturer would be entitled to a *mandamus*, if by immemorial usage he was entitled to the pulpit, although he was supported by voluntary contribution. He is entitled to a *mandamus* without temporal rights. If sufficient grounds are shewn for issuing the *mandamus*, the court will issue it notwithstanding adverse affidavits, for the prosecutor cannot bring forward suppletory evidence, or evidence to contradict adverse affidavits. If the evidence is contradictory the court will issue the *mandamus*, and try the right on the return. The affidavits are *ex parte.* There is no case where a *mandamus* was refused, because of contradictory depositions. In *Esp.* 671, *Rex vs. Bland,* nothing is said as to contradictory evidence. It may be doubtful without depending on contradictory evidence. In 3 *T. R.* 575, nothing contradictory was produced. The prosecutor had no title on his own shewing. If he had shewn he had complied with the requisites, no contradictory proof would have been regarded. Contradictory evidence, arising from record evidence, stands upon a different footing from parol evidence.— 1 *T. R.* 331—No person can be a lecturer without the

consent of the rector, unless by immemorial custom. The testimony given in the case was only explanatory and not adverse; there was no evidence of any endowment, and per *Buller*, J. there is no contradictory evidence; for the parties have not sworn to any one instance, in which a lecturer has been licensed without the consent of the rector. In 2 *T. R.* 183, it had not been denied to be a public office. So in *Cowp.* 523. —There was right to a *mandamus* according to the admission of the party. So also in 1. *Wils.* 11.—Not entitled to a *mandamus* upon the party's own shewing. In all the cases produced, without regarding contradictory proof, the party shewed no title. In 2 *Burr.* 1045, Lord *Mansfield* said, " we cannot try the merits upon affidavit. He *claims a right*, though it is litigated; and that is sufficient for the present purpose." In 1 *T. R.* 425, 426, where there is any thing to be tried the court will grant the *mandamus*. It is admitted, if there is a doubt, the court will grant a *mandamus*.

As to the appointment and removal of Mr. *Runkel*, the evidence in support of the rule is the letter of the synod. Those who have a right to concur in the appointment ought to concur in the dismissal. A good clergyman, who reproves his parishioners, must give offence. The synod would remove upon just cause. They have no mode of forcing a compliance but by advice and reproof. The elders may depend on the congregation for reimbursement by voluntary contribution. By the rules of the church the congregation appoint and displace at pleasure. All the depositions prove that one uniform rule has been observed; that they have always applied for advice to the synod.

*Key*, in reply, contra the rule. A negative in the synod is oppressive upon the congregation. It is admitted that the Rev. Mr. *Runkel* was called, and a vocation granted to him. He must shew a title, and no inference or implication will be sufficient for that purpose. It does not appear that he was a member of the synod, or ordained. It ought to be stated and proved plainly and unequivocally that he was. If adversary affidavits are not received, the more reason for requiring strong and unexceptionable evidence of his title. There was no synod in this country before the revolution. This one style themselves The Synod of the United States. A *mandamus* to admit, requires less evidence than a *mandamus* to restore. It is granted in the former for the purpose of trying the right; but in the latter the party must shew a *prima facie* title. —3 *T. R.* 575. In this case the minister was two years in possession, and why not infer he was ordained from his being in possession. There was a probable and not a ne-

cessary implication as in the case before the court. So in *Salk.* 428, 432, there appeared to be a power of removal at pleasure, but because the removal was for faults in his office, and not in pursuance of that power, the cause returned was held to be insufficient. Although inference and implication are sufficient to satisfy a jury in trying title, it is not sufficient to induce the court to grant a *mandamus.* The emoluments in this case flow from contract, and are not incident to the function. Emoluments, which depend on voluntary contribution, are not sufficient to warrant the court in issuing a *mandamus.*—1 *Wils.* 15. *Esp.* 665. 4. *T. R.* 125. In 1 *T. R.* 133, If the lectureship had been endowed, that would afford a strong argument to support the custom, and to shew that it had a legal commencement. But the lectureship was not endowed; it depended upon voluntary contribution. Here the contract is with the elders. The emoluments depend on contract, and are not *virtute functionis.* It is similar to the case of a glebe, to which the minister is entitled in virtue of his appointment, and he enjoyed the 40 perch poll as incident to his function. The case of an endowed pastor is the only case in which a *mandamus* issues. The deed from *Dulany* to the trustees gives no emolument. Will a *mandamus* issue to restore a schoolmaster? In 2 *Burr.* 1043, it was a private chapel, being a donative endowed with lands. It was the case of a contract for a definite time to preach in a private chapel, or to keep a private school. Endowment has a precise meaning. It is a portion of the glebe or land belonging to the parsonage, and tithes, which are not to be diminished during the time of the incumbent. 1 *Blk. Com.* 387—A right to preach in the church is not an endowment. Adverse affidavits are laid before the court for the purpose of defeating the claim of the prosecutor. In 1 *T. R.* 425, The usage was the fact in contest, and the court considered the adverse proof. In *Cowp.* 523, the admission is part of the prosecutor's proof. The case in 1 *T. R.* 331, shews that the court considered it a discretionary writ; and yet, according to the argument of the Attorney General, the court are to be precluded from considering the facts upon which they are to exercise their discretion.

CHASE, J. [May Term, 1796,] delivered the following opinion:

This is a motion to shew cause why a writ of *mandamus* should not issue, commanding the defendants to restore the Reverend *William Runkel* into the place and function of minister of the congregation of the German or High Dutch Reformed Christian Church in Frederick Town.

At a former sitting, when the court was full, several questions of law, arising under this motion, were very fully and ably discussed, and the court were then prepared to deliver their judgment, and recommended to the parties to try the right in a feigned issue, with the view that a decision might take place in an easy and expeditious way, and with less expense to the parties; and that peace, good will and harmony, might be the sooner restored in the congregation; and not from any reluctance to decide the case before them. The recommendation of the court having failed, I shall now endeavour to pronounce that judgment, in which the judges unanimously concurred upon freely conferring together, and interchanging their sentiments.

The writ of *mandamus* is a prerogative writ, and grantable where the public justice of the state is concerned; and commands the execution of an act where otherwise justice would be obstructed—3 *Bac. Ab.* 527. It is denominated a prerogative writ, because the king, being the fountain of justice, it is interposed by his authority, transferred to the court of King's Bench, to prevent disorder, from a failure of justice, where the law has established no specific remedy, and where in justice and good government there ought to be one—3 *Burr.* 1267. It is a writ of right, and lies where there is a right to execute an office, perform a service, or exercise a franchise, and a person is kept out of possession, or dispossessed of such right, and has no other specific legal remedy—3 *Burr.* 1266. It is the true specific remedy to restore a person wrongfully dispossessed of an office or function which draws after it temporal rights—2 *Burr.* 1045.

The court of King's Bench having a superintending power over inferior courts of jurisdictions, may and of right ought, to interfere to supply a remedy when the ordinary forms of proceeding are inadequate to the attainment of justice in matters of public concern—3 *Bac. Ab.* 529, 530. The position that this court is invested with similar powers, is generally admitted, and the decisions have invariably conformed to it; from whence the inference is plainly deducible, that this court may, and of right ought, for the sake of justice, to interpose in a summary way to supply a remedy where, for the want of a specific one, there would otherwise be a failure of justice.

It has been held to lie to restore a town clerk—a recorder—clerk of the peace—the steward of a court leet—an attorney—a churchwarden—sexton—parish clerk—schoolmaster—constable—lecturers—scavengers, &c.—3 *Ba. Ab.* 530. The curate of a chapel—2 *Burr.* 1044.

Oct. 1799.

Runkel
vs.
Winemiller.

And since the act of toleration, to admit an endowed pro-testant dissenter.

Thus much being premised, a foundation is laid for the opinion of the court in this case.

Religion is of general and public concern, and on its support depend, in great measure, the peace and good order of government, the safety and happiness of the people. By our form of government, the christian religion is the established religion; and all sects and denominations of christians are placed upon the same equal footing, and are equally entitled to protection in their religious liberty. The principles of the christian religion cannot be diffused, and its doctrines generally propagated, without places of public worship, and teachers and ministers, to explain the scriptures to the people, and to enforce an observance of the precepts of religion by their preaching and living. And the pastors, teachers and ministers, of every denomination of christians, are equally entitled to the protection of the law, and to the enjoyment of their religious and temporal rights. And the court are of opinion, that every endowed minister, of any sect or denomination of christians, who has been wrongfully dispossessed of his pulpit, is entitled to the writ of *mandamus* to be restored to his function, and the temporal rights with which it is endowed.

As to the point, whether the Rev. Mr. *Runkel* has shewed sufficient evidence of his right to preach in the church of the German Reformed Congregation in Frederick-town: It is admitted that *prima facie* evidence is sufficient to induce the court to grant the *mandamus*, and the authorities cited unquestionably prove the law to be so. *Prima facie* evidence is that kind of testimony which establishes a presumption of right and is sufficient legal proof. It is not conclusive evidence, but is liable to be repelled or defeated by contrary proof. The proof in this case is, that according to the mode of electing a minister by the constitution of this church, the congregation applied to the synod of Pennsylvania for a minister to supply the place of Mr. *Henop* who had resigned or left the church. That the synod recommended the Reverend Mr. *Runkel* to the congregation, who approved of him, and he had a vocation from the elders, and was received and inducted, and was put in possession of the church and parsonage-house, and became entitled to the emoluments allowed him, by contract with the elders, and was in possession about eight years, and until the time he was forcibly dispossessed by the defendants. According to the proof, the synod is composed of ministers of the High Dutch Reformed Congregation in the United States of America; and no person can be appointed as a

preacher but one of the synod. And by one of the articles of the church, no person can be appointed a minister who is not regularly ordained. It is objected, this evidence is not sufficient, because it is not proved. Mr. Runkel was a member of the synod, nor is it proved that he was regularly ordained.

The court are of opinion, that this is strong *prima facie* evidence, and that it is necessary to be inferred from the facts proved, that Mr Runkel was a member of the synod and regularly ordained. The recommendation of Mr. Runkel by the synod; the approbation of the congregation; the vocation of Mr. Runkel by the elders; his induction and quiet possession for eight years, and no objection being made to him by the congregation for want of these qualifications, is very strong *prima facie* evidence, and afford a sufficient ground to warrant the court in presuming those facts, and that the right is in him. The office or function of minister must be endowed, or a *mandamus* to restore cannot be granted. Endowment does not necessarily mean that land and tithes must be annexed to the living, in exclusion of any other provision or means of support; but a stipend, rents, emoluments and advantages, of any kind, given and secured to the minister during the time he shall officiate as minister of such church or meeting-house, as a compensation for his services, is an endowment.

In this case there are temporal rights or emoluments annexed to this living. In the vocation, which is the appointment of the Reverend Mr. Runkel to his function as minister of this meeting-house, there is a contract made by the elders with him, to furnish him with a dwelling-house (rent free,) eighteen cords of wood, and 80l. current money annually, for officiating. The right to receive these emoluments commenced with his appointment, and he was to enjoy them during the time he should officiate as minister in that church. The right to the function, as the substance, draws to it these emoluments as appurtenant thereto; for as long as he officiates as minister of that church, he will have a claim on the elders, who signed the vocation and contract for the emoluments stipulated to be provided by them for the Reverend Mr. Runkel, and they are personally responsible to him for them; and they must depend on the engagement or voluntary subscriptions of the congregation for their reimbursement.

As to the parsonage-house, it is admitted Mr. Runkel was put in possession as minister, and that he has ever since remained in possession. The ground on which the parsonage-house is erected, was conveyed to trustees, (since dead,) without words of limitation, for the use of the congregation.

Oct. 1799.

Runkel
vs.
Winemiller.

Congregation means an assemblage or union of persons in society for some religious purpose, to unite in the public worship of their God, in such manner as they deem most acceptable to him; and they have actually appropriated this ground to the use of their minister, who retains possession of it under such appropriation. The congregation have an equitable claim to this ground, and such a right as a court of chancery would carry into effect.

Here, then, is a function with emoluments, and unless the court interpose and grant a *mandamus* to restore him to his pulpit and the use of the church, he will be without any specific remedy to recover the pulpit, and without remedy to recover the emoluments stipulated to be furnished; for the emoluments are annexed and appurtenant to the function, and unless he is restored to it he will be without remedy to recover them.

As to the adversary affidavits; the court are of opinion that as sufficient *prima facie* evidence has been produced by the prosecutor in support of his claim and right to his function as minister of this church, they cannot try the merits upon affidavit. And the case of *King vs. Blooer*, is full and decisive to this purpose, and was not decided on the ground of the refusal of *Blooer* to try the right in a feigned issue. The evidence in the case of *The King vs. Blooer*, produced by the prosecutor, was not so strong and satisfactory as the evidence in this case. *Evans*, who claimed the nomination of the curate, only swears that he believes he has the right of nomination; and *Langley* had been in possession only eleven weeks, and had a licence.

The proof in the case before the court is, that the synod had the right to recommend a minister to the congregation; that they did recommend Mr. *Runkel*, who was approved by the congregation; had a vocation from the elders, was inducted and put in possession of the church and parsonage-house, and has been in possession and in the exercise of his function upwards of eight years, and until dispossessed by force and violence; and this done pursuant to the mode of appointment established by the church government of the congregation, and no objection ever made to Mr. *Runkel*, by the congregation, as not being a minister of the synod, or that he was not regularly ordained.

Adversary or contradictory affidavits are not considered by the court, for the following reasons:

The *mandamus* is a summary proceeding, introduced for the advancement of justice. The evidence is taken *ex parte* without an opportunity to cross examine; no suppletory or additional evidence is admissible. The

persons opposed to the motion come prepared to combat the proof of the prosecutor, who has no opportunity of cross examining or impeaching such proof by giving further evidence. And where the evidence is contradictory, the weight of it, one way or other, may depend on the credit of witnesses; and it is the province of the jury to decide facts, and to determine on the credit of witnesses; and by granting the *mandamus*, the decision of facts will be referred to the proper tribunal, and the right in litigation tried in a constitutional and legal way. But should the *mandamus* be refused, the prosecutor is without remedy.

THE COURT ordered a *mandamus* to issue. The writ accordingly issued, vide 2 *Har. Ent.* 704. And on the return day of the writ, (October 1796,) *Martin*, (Attorney General,) and *Cooke*, for the prosecutor, moved the court for a rule on the defendants to shew cause' why a return had not been made to the writ. They filed affidavits of the service of true copies of the writ on all the defendants except two, who had removed out of the state.

*Key* and *Shaaff*. for the defendants, objected, that it did not appear from the affidavits of the service of the writ that notice was given to each of the defendants, and also that an *office copy* of the writ was not served on each of the defendants.

THE COURT granted the rule on all the defendants, except the two on whom there had been no service of the writ, to return the writ by the 22d of October, then instant. On which day the prosecutor, by his counsel, filed affidavits of services of attested copies of the rule on each of the defendants.

The defendants made a return to the writ, which see, *ante*.

*Martin*, (Attorney-General,) and *Cooke*, moved the court for a peremptory *mandamus*, which motion was continued under *curia adv. vult*. until the present term, (October 1799.)

*Harper*, in favour of the motion for a peremptory *mandamus*. The return made to the *mandamus* is insufficient for incertainty. The question is, whether the cause for not restoring is sufficient. The return does not state that Mr. *Runkel* had notice, nor does it state that the congregation had notice. He raised two objections to the return—1st. That the majority is not named; and 2dly, That the congregation had no notice.

Oct. 1799.

Runkel
vs.
Winemiller.

1st. *Objection.* Every matter of substance ought to be set forth, which in this case is not sufficiently done; and the party ought to have an opportunity of controverting the allegations. Cites *Com. tit. Pleadings*, 532. 5 *Com.* 43, 49, 70. *Doug.* 214, *Salk.* 433. 5 *Mod.* 11. *Doug.* 158. 2 *Burr.* 731. *Salk.* 430. 1 *Show.* 282. 6 *Mod.* 309. 1 *Stra.* 64. 2 *Ld. Ray.* 1566. 5 *Mod.* 288, 289. *Doug.* 181. "The majority" is too general an allegation; it should be stated who were the majority, that the party might have an opportunity of knowing.

2d. *Objection.* It cannot be said the congregation met when the bare majority met. Notice is necessary in cases of corporations. Cited 2 *Burr.* 723, 743. *Stra.* 1051, 385, 115. The return does not state that the party had notice, which is essentially necessary where he is to be deprived of his fairest rights.

*Shaaff,* for the defendant, contended,
1st. That the return is a good one.
2dly. That even if the return is not good on the face of it, the court will not grant a peremptory writ.
3dly. That the court cannot quash the return, because the case is not before them.

As to the first. The return states, that a majority of the members, at their sole will and pleasure, may elect a minister; that they did elect Mr. *Runkel,* the prosecutor. That a majority of the members may at any time, at their sole will, &c. without cause, remove. That a majority of the members, and the defendants being part, met and removed the prosecutor. These facts being stated on this return, must be taken as true; and the party compelled to bring his action—3 *Blk. Com.* 111. 11 *Co.* 99. A suit has already been brought in this court for the false return, and is now depending.

The return is positive and particular; the removal is by the very power to whom it is given by the rules, viz. the majority. An officer may be removeable *ad libitum*— *Stra.* 115. 4 *Com. Dig.* 213.

Three objections are stated to the return. 1st. No notice of the meeting, &c. 2d. No meeting of the congregation, but only of the majority; and 3d. The names of the members of the majority are not mentioned.

With respect to the first objection, that notice of the meeting was necessary, to prove which 2 *Burr.* 723, and 2 *Stra.* 1051, &c. have been cited. It may be answered that all the authorities in the books relate to *corporations.* In corporations a man having a *corporate* right ought not to lose it except by a *corporate act.* The individuals composing the corporation cannot do any act, except in a legal assembly, to which a notice is necessa-

ry. If there was no notice they would only be a collection of individuals without any corporate power, and not competent to do any legal act. The corporation has officers to give notice. Here there is no corporation, no officers to give notice, no authority to direct notice; and if any was given, it would only be the act of some individual. If notice was necessary none could ever be had, and there could be no legal meeting. All the cases are of instances where the party is only removable for *cause*. Here he is only *ad libitum*. The return states, that at any time the majority may remove, &c. and the removal is exactly within the power.

With respect to the second objection which has been raised against the return, there can be no weight in it. It is returned that a majority of the members may remove; and that a majority of the members did meet and remove. The assembly is stated *verbatim* within the power. But even if it should be thought necessary to state it, the meeting of the majority is the meeting of the body.

With respect to the third objection which has been raised, it may be answered, that the nature of the return is to shew a sufficient amotion. It is not the nature of the return to give the party a better writ, like a plea in abatement. If the return is certain and positive, it is sufficient; and to return that a majority removed, &c. is as positive an assertion as if the names of the majority had been returned. If more than a majority had met, why give the names? If the majority did not meet and remove, the party may still have an action.

It is clearly proved that it is a good return; but taking it as not good, there is sufficient disclosed to shew that the party ought not to have a peremptory writ. This leads to the

2d. It does not universally follow, that on quashing a return there will be a *peremptory mandamus*. Cites *Comb* 213, *Cowp.* 523, where the return was made only by part of those who ought to have made it, of course the peremptory *mandamus* would have been nugatory. The return was quashed, and a new writ ordered.

In this case the return is made only by a part of those who ought to do the thing by the majority. It would be nugatory to grant the peremptory writ, because those to whom directed could not do what is required. The nature of this writ cannot be to restore the party against any power, except those to whom it is directed, and they will have no power to remove force, but the return of the writ will be, (and at this time it must be so believed,) that a majority removed.

3d. The cause is not before the court. It stands thus —The return was filed at October term, 1796, and the cause continued under *curia advisare vult.* The same continuances at May and October terms, 1797; at May term, 1798, the same continuance *by consent.* At October term, 1798, the same continuance, except *not by consent.* At May term 1799, the same continuance *by consent.* On any principle, the cause must have been discontinued at October term 1798, and could not be before the court at May term 1799. The continuance then, *by consent,* could not have the effect to *reinstate* the cause. The only effect of the continuance by consent, is to place the cause at the succeeding term in the same situation it was in at the preceding one.

THE COURT ordered a *peremptory mandamus.* Vide the writ 2 *Harr. Ent.* 706.

———

## GENERAL COURT, OCTOBER TERM, 1799.

### THE BANK OF COLUMBIA *vs.* D. ROSS.

FIERI FACIAS, under the act of assembly of 1793, *ch.* 30, *s.* 14, entitled, "*An act to establish a Bank in the District of Columbia,*" issued on the 14th of August 1799, and directed to the sheriff of Prince-George's county; also duplicates of the said writ, directed to the sheriffs of Washington and Allegany counties. [Vide the form of the writ in 2 *Harr. Ent.* 637, 638.] The sheriffs to whom the writ and duplicates were directed, made returns, "*laid as per schedule on real and personal property, and unsold,*" &c,

MOTION on the part of the defendant to *quash* the execution.

The case appears to be as follows: On the 3d of April 1799, *Horatio Ross,* by his note, sixty days after date, promised to pay to *David Ross,* (the defendant,) or order, (at the house of Mr. *James M. Lingan,* George Town,) $ 5518 for value received, negotiable at the Bank of Columbia. *David Ross* endorsed to *Archibald Ross,* who endorsed to *James M. Lingan,* who endorsed to the president, directors and company, of the Bank of Columbia, in the usual manner. The note was duly protested on the 6th of June 1799, for nonpayment. The president of the bank, on the 27th of July 1799, duly notified the drawer, and each of the endorsers, that the bank was in possession of the note, and that the amount thereof was due; they were therefore respectively demanded